UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,             Criminal No. 17-196 (DWF/DTS)

      Plaintiff,

v.                                              MEMORANDUM
                                              OPINION AND ORDER
Brent Alan Kehler,

      Defendant.

## INTRODUCTION

This matter is before the Court on Defendant Brent Alan Kehler's motion for compassionate release. (Doc. No. 122.) Based on the record and arguments before the Court, a ruling on Kehler's motion was stayed for a period of three months pending an updated medical assessment of his condition. (Doc. No. 135.) The parties have submitted supplemental briefing and additional medical records. For the reasons discussed below, the Court grants Kehler's motion.

## BACKGROUND

Kehler was arrested on August 15, 2017 and released on bond to pretrial supervision on August 18, 2017. (Doc. Nos. 17–20; Doc. No. 95 ("PSR") ¶ 19.) On November 16, 2017, Kehler pled guilty to knowingly and intentionally conspiring to distribute 50 or more grams of methamphetamine in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. (Doc. No. 62.)

On January 4, 2018, Kehler's probation officer notified the Court of several alleged presentence violations so the Court issued a bench warrant for Kehler's arrest. (Doc. Nos. 72, 75.) The warrant was executed on March 12, 2018 following a high-speed car chase with U.S. Marshals and Kehler has been in custody ever since. (Doc. No. 92; PSR ¶ 19.) The PSR recommended a guideline sentence of 210 to 262 months. (PSR ¶ 127.) The recommendation included a 2-level enhancement for reckless endangerment during flight. (*Id.* ¶ 129.) The recommendation also reflected a significant criminal history, including eight prior felonies. (*Id.* ¶¶ 40–97.) The PSR also noted that Kehler violated the terms of his probation or supervised release on numerous occasions, and that he escaped from custody while serving sentences in two separate cases. (*Id.* ¶¶ 45–46, 48, 51, 53, 59, 62-63, 65, 70, 79.) On August 21, 2018, the Court sentenced Kehler to 110 months' imprisonment followed by a five-year term of supervised release. (Doc. Nos. 106–107.)

In November 2019, Kehler began to experience weakness and pain in his arms and legs. (Doc. No. 124-1 ("Def. Appx.") at 133–34, 488–91.) On November 22, 2019, Kehler reported to BOP medical staff that he could not move or feel anything from his abdomen to his toes. (*Id.* at 126.) On the same day, BOP medical staff sent Kehler to a local hospital. (*Id.* at 131–32.) An MRI showed that Kehler was suffering from an epidural abscess with cervical cord swelling and signs pointing to spinal cord infarction. (*Id.* at 516.) Surgeons performed a decompressive laminectomy on November 23, 2019. (*Id.*) On November 24, 2019, Kehler regained sensation in his lower extremities insofar as he could detect touch and feel pain on his feet; however, he remained paralyzed and

could not move his lower body.  (*Id.* at 587–88.)  Since this time, Kehler has received physical and occupational therapy designed to help him live with his impairment.  (*Id.* at 352–64, 371–438.)

Kehler is currently incarcerated at Springfield MCFP in Missouri with a projected release date of December 24, 2025.  BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed November 18, 2020).  When he arrived at Springfield MCFP on March 11, 2020, a nurse assessed Kehler as "a paraplegic with no movement to his lower extremities, sensation still intact.  Incontinent of bladder and bowel.  Needs help with [activities of daily life] to include showering, diaper care, transferring, and dressing.  Can feed himself."  (Def. Appx. at 95.)  The next day, Dr. Moose evaluated Kehler and opined that his paraplegia was "improving" and "motor function slowly returning."  (*Id.* at 83–88.)

Kehler requested compassionate release in February 2020 from the warden at USP Leavenworth, where he was incarcerated at the time.  (Def. Appx. at 1–2.)  The warden recommended that release be granted.  (*Id.*)  Soon after, this District's Probation and Pretrial Services investigated Kehler's release plan and approved it.  (Doc. No. 119.)  According to the release plan, Kehler's sister was willing and able to provide care for him.  (*Id.*).  On April 13, 2020, Kehler was notified by the BOP Office of General Counsel that his request for compassionate release was denied.  (Def. Appx. at 3–4.)  The denial asserted that because of Kehler's improvements, he no was no longer sufficiently debilitated to warrant release.  (*Id.*)

Kehler then moved for release pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. No. 122.) The Court stayed this matter for three months to determine whether Kehler's condition is improving or whether it appears permanent. (Doc. No. 135.) Those three months have passed and the parties have submitted supplemental memoranda and updated medical records. (Doc. Nos. 136–39.)

On October 2, 2020, Dr. Moose wrote a Special Progress Note. (Doc. No. 137-1.) Dr. Moose indicated Kehler was "without significant change over past six months." (*Id.*) Kehler has "had no significant improvement, so present prediction is that he will not become ambulatory and will continue with wheelchair dependence." (*Id.*) Kehler "requires some assistance with dressing and bathing and transfer to a wheelchair which he can self-propel within his housing unit." (*Id.*) Indeed, according to the medical records, Kehler requires various forms of assistance—turning and repositioning; diaper care; catheter care; bath/showering; skin checks—approximately two dozen times per day. (Doc. No. 137 at 306–579.)

## DISCUSSION

The First Step Act allows the Court to reduce a defendant's term of imprisonment if it finds "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Such "extraordinary and compelling reasons" include (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories. U.S.S.G. § 1B1.13, cmt. n.1(a)(ii). The Court must

also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

Kehler suffers from a debilitating medical condition that diminishes his ability for self-care in prison to such an extent that he relies entirely on BOP medical personnel to remain healthy. Kehler cannot get into his wheelchair on his own, Kehler cannot bathe or shower on his own, and Kehler cannot move around bed on his own. Kehler cannot control his bladder or bowels and needs frequent catheter changes. Indeed, the BOP itself appears to have agreed Kehler suffers from a debilitating medical condition but questioned whether he was expected to recover. (Med. Appx. at 3–4.) Kehler has not recovered and Dr. Moose has opined that Kehler will remain a paraplegic and wheelchair dependent. (Doc. No. 137-1.) Kehler's paraplegia has remained steady. Steady does not mean improving and, thus, Kehler cannot be expected to recover. As such, this Court concludes extraordinary and compelling reasons warrant a reduction in Kehler's sentence.

The Government asserts that Kehler's non-improvement is irrelevant because it "is due largely to [Kehler's] own behavior." (Doc. No. 138 at 2.) The Government cites an instance where Kehler recounted to his physical therapist that he was expecting to be released from prison, so they started focusing on home care activities. The Government likewise cites reports where Kehler was described as "not very motivated," refused Hepatitis C treatment, admitted to "poor willpower" with respect to dieting for weight control, and two instances in late-August 2020 where he refused to obey a 3x-per-day out-of-bed order. (*Id.* at 2–3.) The presence or lack of a "can-do" attitude is not what

5

carries the day with respect to Kehler's compassionate release motion. Rather, Kehler's medical records do. Those medical records are clear: Kehler is 57-year-old obese paraplegic confined to a wheelchair for the remainder of his life. He cannot control his bladder or bowels, necessitating the use of a catheter and diaper. He cannot bathe himself alone. He even struggles to remain in his wheelchair for extended periods of time. The Court will not discount Kehler's medical ailments on account of his crestfallen reaction to said ailments. Kehler has been a paraplegic for nearly one year. While his adaption to this new normal could be improved, it does not alter Dr. Moose's conclusion that Kehler will not walk again and remains dependent on other for basic needs.

The Court must next consider whether the general sentencing factors in § 3553(a) warrant a reduction in sentence. As the Court previously noted, "Kehler has served less than a quarter of his sentence, and that he has a history of failing to abide by the conditions of supervised release[], absconding from authorities, and danger towards the community." (Doc. No. 135 at 8.) But Kehler's drastically changed medical condition alters the calculus involved with the § 3553(a) sentencing factors. In his present condition, Kehler poses minimal future danger to the community given that he is confined to a wheelchair and needs assistance in attending his basic needs. Kehler cannot walk and he has difficulty keeping his head upright. Kehler's ability to participate in any BOP rehabilitative programming is dramatically limited due to his medical condition. Kehler's incarceration drains BOP medical resources that could be better spent combating the COVID-19 pandemic. The § 3553(a) factors warrant a reduction in Kehler's sentence to time served.

## CONCLUSION

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Brent Alan Kehler's Motion to Modify Sentence of Imprisonment (Doc. No. [122]) is **GRANTED**;

2. Kehler's sentence of 110 months' imprisonment is **REDUCED** to time served under 18 U.S.C. § 3582(c)(1)(A);

3. Kehler shall be placed on supervised release and the Court re-imposes the terms and conditions of supervised release as set forth in the Judgment (Doc. No. 107).

4. The Court directs the Bureau of Prisons to immediately commence the process of releasing Kehler from custody, and to release him as soon as his medical condition permits. To ensure Kehler's health and safety upon release, the Court authorizes Kehler's release from BOP custody as soon as the release plan is implemented, travel arrangements can be made, and any applicable quarantine period required in light of the COVID-19 pandemic has been completed. The Court leaves it to the discretion of the Bureau of Prisons and the United States Probation Office to determine whether any quarantine is served in Bureau of Prisons custody, a Residential Reentry Center, or in the community.

Dated:  November 18, 2020         s/Donovan W. Frank
                                  DONOVAN W. FRANK
                                  United States District Judge